UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ELETHA A. HARRIS-NEVES,

      Plaintiff,

v.                        CASE No. 8:11-CV-629-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

_____

ORDER

      The plaintiff in this case seeks judicial review of the denial of her claims for Social Security disability benefits and supplemental security income payments.[*]  Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain reversible error, the decision will be affirmed.

I.

      The plaintiff, who was forty-four years old at the time of the administrative hearing and who has a high school education with some

_____

[*]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 14).

college, has worked as a store cashier, stocker, fast food worker, fast food manager, office cleaner, companion, and babysitter (Tr. 34, 47-48). She filed claims for Social Security disability benefits and supplemental security income payments, alleging that she became disabled on December 31, 2005, due to feet, leg, and back pain; stomach problems; asthma; high blood pressure; and diabetes (Tr. 141-42). The claims were denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of "history of two surgeries on the left foot, one surgery on the right foot for callous formulation, hypertension (controlled), diabetes mellitus (controlled), seasonal asthma, and obesity" (Tr. 15-16). She concluded that, with these impairments, the plaintiff had the following residual functional capacity (Tr. 17):

> [T]he ability to lift, carry, push, or pull 20 pounds occasionally and ten pounds frequently. She is able to sit for six hours and a combination of stand/walk for two hours out of an eight-hour workday. The claimant will require a sit/stand option at her discretion. All climbing of ladders, scaffolding, ropes, or stairs as well as crouching,

> kneeling, and crawling activities are precluded.
> She may occasionally balance or stoop. The
> claimant must avoid concentrated exposure to
> humidity, heat/cold, dust, fumes, or gases.

The law judge decided that these restrictions prevented the plaintiff from

returning to prior employment (Tr. 22). However, based upon the testimony

of a vocational expert, the law judge found that there are jobs that exist in

significant numbers in the national economy that the plaintiff could perform,

such as security monitor, ticket checker, and final assembler (Tr. 23-24). The

law judge therefore ruled that the plaintiff was not disabled (Tr. 24). The

Appeals Council let the decision of the law judge stand as the final decision

of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits and

supplemental security income, a claimant must be unable "to engage in any

substantial gainful activity by reason of any medically determinable physical

or mental impairment which ... has lasted or can be expected to last for a

continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A),

1382c(a)(3)(A). A "physical or mental impairment," under the terms of the

Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D). In this case, the plaintiff must show that she became disabled before her insured status expired on December 31, 2009, in order to receive disability benefits. 42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979), cert. denied, 444 U.S. 952. There is not a similar requirement with respect to the plaintiff's claim for supplemental security income payments.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings."

Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff attacks the law judge's decision on two grounds. First, the plaintiff contends that the law judge failed to give proper weight to the opinion of the plaintiff's treating physician. Second, the plaintiff asserts that the law judge erred when she failed to find the plaintiff credible. These contentions lack merit.

The plaintiff first argues that the law judge erred by failing to give controlling weight to the opinion of Dr. Stanley Kaplan, the plaintiff's treating foot doctor (Doc. 15, pp. 8-11). This argument is baseless.

Dr. Kaplan, a podiatrist, treated the plaintiff for foot pain between April 5, 2006, and August 1, 2007 (id., p. 9). On April 5, 2006, he assessed the plaintiff with sinus tarsi syndrome with peroneal tenosynovitis and intractable poro lesions (Tr. 273). Subsequent treatment notes also indicate painful burning, aching with spasms, cramps, and neuroma (Tr. 268, 272). In January and February 2007, Dr. Kaplan performed extensor tendon lengthening and capsulotomies on the plaintiff's left foot under local anesthesia (Tr. 268-69). Dr. Kaplan reported that the tendon lengthening "apparently [had] helped ... and [the plaintiff had] much less discomfort on

-6-

the left foot and she [was] happy with [the] results of treatment" (Tr. 269). Although the plaintiff experienced an abscess at the incision site "since she [had] been on her feet longer than anticipated," Dr. Kaplan's notes from April and May 2007 indicate that the plaintiff was doing well after surgery and her lesions were much better (Tr. 365-67). With regard to the plaintiff's right foot, Dr. Kaplan stated that the plaintiff had similar but less severe problems than the left foot (Tr. 270).

Opinions from treating physicians are entitled to substantial or considerable weight unless there is good cause for not giving them such weight. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or when the opinion is conclusory or inconsistent with the physician's own medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

The plaintiff predicates her argument on four work statements issued by Dr. Kaplan (Doc. 15, p. 9). The statements indicate that the plaintiff was not allowed to work from March 28, 2007, until April 25, 2007; from May 2, 2007, until June 2, 2007; from June 2, 2007, until July 2, 2007;

and from August 1, 2007, until October 1, 2007 (Tr. 361, 364, 369).  The

plaintiff argues that the law judge failed to accord the proper weight to these

work statements (Doc. 15, p. 9).

The law judge considered these statements, but discounted them.

Thus, she said (Tr. 21):

> Dr. Kaplan authored four work-release statements
> wherein he stated that the claimant was unable to
> work.  However, the longest time period that Dr.
> Kaplan opined that the claimant was unable to
> work covered 120 days.  Dr. Kaplan has not
> provided any other work release statements since
> 2007.    Most importantly, Dr. Kaplan never
> established an opinion of disability for 12 months
> or longer. As such, the undersigned has considered
> the statements but has not found them persuasive.
> (Exhibit 16F)

The law judge, therefore, concluded that the work statements, on

their face, fell short of demonstrating a disability for the required period of

at least twelve months.  As the Commissioner cogently argues, "even if

accorded controlling weight, Dr. Kaplan's statements still are not sufficient

to meet Plaintiff's burden on appeal because they do not establish that

Plaintiff was unable to work for a continuous period of twelve months" (Doc.

16, p. 6).

The plaintiff tries to stretch Dr. Kaplan's statements by pointing to other evidence in the record of foot problems. However, the plaintiff's specific issue is that the law judge failed to give proper weight to Dr. Kaplan's opinions (Doc. 15, p. 8). Significantly, the scheduling Order directed the plaintiff to "identify with particularity the discrete grounds upon which the administrative decision is being challenged" (Doc. 12, p. 2). The discrete ground identified on this issue is the weight given to Dr. Kaplan's opinions; it is not the law judge's evaluation of the evidence regarding the plaintiff's foot problems. Consequently, the other evidence mentioned by the plaintiff on this issue is beside the point.

Dr. Kaplan's opinions, therefore, are not somehow amended by other evidence to cover a twelve-month period. His opinions are what he said they were. And, as indicated, they are inadequate to show the required period of disability for at least twelve months.

Furthermore, even if the statements covered a period of twelve months, they are merely conclusory markings on a form indicating that the plaintiff cannot work for a period of time, without any meaningful information regarding the plaintiff's impairments or functional limitations.

-9-

Thus, all that the printed form says is that the plaintiff "is under treatment for a foot disability" (see, e.g., Tr. 361). Therefore, the law judge could properly discount Dr. Kaplan's work statements. Johns v. Bowen, 821 F.2d 551, 555 (11th Cir. 1987); Lanier v. Commissioner of Social Security, 252 Fed. Appx. 311, 314 (11th Cir. 2007).

Moreover, the issue of whether a claimant is disabled is reserved to the Commissioner under the regulations.    20 C.F.R. 404.1527(d); 416.927(d); Lanier v. Commissioner of Social Security, supra, 252 Fed. Appx. at 314. That principle seems particularly apt here to permit the law judge to disregard a conclusory statement of a "foot disability," and find instead that the plaintiff could perform sedentary work.

Finally, the plaintiff refers to the Listings of Impairments in Appendix 1. See 20 C.F.R. Part 404, Subpart P, App. 1 (Doc. 15, p. 10). If, by that reference, the plaintiff is seeking to raise a contention that she meets, or equals, a listing, the contention fails.

In the first place, the plaintiff did not identify any such issue as required by the scheduling Order. She also did not meet the requirement that "any such discrete challenges must be supported by citations to the record of

the pertinent facts and by citations of the governing legal standards" (Doc. 12, p. 2). These deficiencies are sufficient to warrant rejection of any Appendix 1 contention.

Further, the plaintiff bears the burden of showing that she meets, or equals, a listing. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987). Moreover, "when a claimant contends that [s]he has an impairment meeting the listed impairments entitling h[er] to an adjudication of disability under regulation 404.1520(d) [or 416.920(d)], [s]he must present specific medical findings that meet the various tests listed under the description of the applicable impairment or, if in the alternative [s]he contends that [s]he has an impairment which is equal to one of the listed impairments, the claimant must present medical evidence which describes how the impairment has such an equivalency." Bell v. Bowen, 796 F.2d 1350, 1353 (11th Cir. 1986); see also Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002).

The plaintiff's entire argument on this point consists of a recitation of the definition set forth in the introduction to the musculoskeletal listings and a statement that her inability to ambulate satisfies this definition (Doc. 15, pp. 10-11). As the Commissioner persuasively argues, the plaintiff

"has not identified which listing she believes she meets" (Doc. 16, p. 6 n.4).

In light of the plaintiff's failure to direct this court to an appropriate listing, the argument is waived for this reason, as well.

The plaintiff's second contention is that the law judge erred by failing to find the plaintiff credible (Doc. 15, pp. 11-16). Specifically, the plaintiff contends that the medical evidence substantiates her subjective complaints concerning her chronic pain and depression (id., p. 15). This contention is also meritless.

The Eleventh Circuit has established a standard for evaluating complaints of pain and other subjective complaints. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge determines that, under this test, there is objectively determined medical evidence of an impairment which could reasonably be

expected to produce disabling pain, the law judge "must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n.6 (11th Cir. 1985).

The law judge properly applied the Eleventh Circuit's pain standard. The law judge recognized the need to articulate a credibility determination, and referred to the pertinent regulations and Social Security rulings (Tr. 17-18). She also set forth the controlling principles (Tr. 18). This demonstrates that the law judge employed the proper standards. See Wilson v. Barnhart, supra, 284 F.3d at 1225-26.

Moreover, the law judge discussed the plaintiff's testimony in her decision, and she specifically referred to the plaintiff's allegations of foot pain (Tr. 18-19). The law judge also reviewed the plaintiff's disability report, function report, and pain questionnaire, wherein the plaintiff described her pain (Tr. 18). Significantly, the law judge did not wholly discount the plaintiff's subjective complaints, but rather concluded that those problems substantially limited the plaintiff to sedentary work, albeit with the lifting and carrying capacity of light work.

The law judge stated that she "has afforded the claimant a great deal of latitude when considering her allegations of pain and limitations, and in order to resolve every trace of doubt in the claimant's favor, [she] formulated the residual functional capacity to accommodate her completely subjective complaints" (Tr. 22).   Accordingly, she limited the plaintiff's standing and walking to no more than two hours in an eight-hour workday (Tr. 17). Further, she imposed greater postural and environmental limitations than those set forth in the physical residual functional capacity assessment prepared by a non-examining reviewing physician (compare Tr. 17 with Tr. 385-92).  Thus, the law judge precluded the plaintiff  from "all climbing of ladders, scaffolding, ropes, or stairs as well as crouching, kneeling, and crawling activities" (Tr. 22).  The law judge also provided the plaintiff with a sit/stand option, and she restricted the plaintiff from "concentrated exposure to humidity, heat/cold, dust, fumes, or gases" (Tr. 17).  In short, the law judge accepted to a great extent the plaintiff's allegations of limitations, and merely rejected the claim of total disability.

In her credibility determination, the law judge gave a lengthy and cogent explanation for declining to fully credit the plaintiff's subjective complaints of pain. Specifically, the law judge stated (Tr. 19-20):

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> In determining the claimant's residual capacity, the undersigned has considered the claimant's allegations of a history of two surgeries on the right foot, one surgery on the left foot for callous formation, hypertension (controlled), diabetes mellitus (controlled), seasonal asthma, and obesity as well as any other condition deemed "not severe." Although the claimant does have some limitations in her ability to perform work-related activities, the medical evidence of record does not totally preclude her from performing these activities. The severity of the claimant's allegations of pain and limitation is not supported by the objective laboratory findings of record. For example, x-rays of July 10, 2007, of the right/left knees revealed some degenerative changes but no acute abnormalities. X-rays of the lumbar spine showed normal anatomic alignment without any

compression deformities. Impression was negative lumbar spine radiographs. (Exhibit 19F)

The severity of claimant's allegations of pain and limitation is not consistent with objective clinical findings of record. For example, on May 21, 2007, Patrick A. Ijewere, M.D. conducted a consultative examination. Examination revealed no cyanosis, clubbing, edema, statis dermatitis, or varicosities in the extremities. There were no distal interphalangeal (DIP), proximal interphalangeal (PIP), or metacarpophalangeal (MCP) signs and no signs bilaterally in the wrists, elbows, shoulders, hips, knees, and ankles. The claimant exhibited no difficulty getting up/down from an armless chair or the examination table. She was able to tandem walk, heel/toe walk, hop, and squat normally. Gait was described as "a mild limp gait" but she could walk without the need of an assistive device. There was no tenderness in the cervical, thoracic, or lumbosacral areas of the spine. Grip strength was 5/5 bilaterally and she was able to perform fine manipulation with normal dexterity. There was no atrophy or motor deficit noted in the lower left/right extremities. (Exhibit 11F) Following surgery, Stanley Kaplan, M.D. reported that the claimant's left foot was doing well. Dehiscence with abscess on the medial aspect of the left foot had resolved well. The edema that was present was considered as post-op edema. (Exhibit 16F) When the claimant presented to the emergency room of the Tampa General Hospital for a non disability related problem, the physical examination showed that the extremities were described as "good pulses

in all extremities, no swelling/tenderness, and no edema." (Exhibit 20F)

The undersigned has found it reasonable to conclude that the claimant's allegations of an inability to sustain regular and continuing work secondary to pain and limitations does not find full support in the medical evidence of record or in her testimony. More to the point, the claimant's testimony casts significant doubt upon the true extent of her limitations and her credibility. For example, when completing the Function Report (Exhibit 11E), the claimant indicated that she arose at 5:00 a.m., checked her blood sugar level, took her medications, and then mopped if needed. However, if the claimant's impairments were as severe as she has alleged, it is unreasonable to conclude that on a "good day" she would be able to mop a floor when considering the strenuous exertion required and the need to stand for a prolonged period including the twisting/turning involved with mopping. Although, the claimant has alleged severe pain in her feet, Dr. Kaplan described the surgery performed on February 14, 2007, as "conservative surgical care" for mild plantar fasciitis with associated neuroma pain of the left foot. Dr. Kaplan categorized the neuroma pain as "not severe." On January 31, 2007, Dr. Kaplan reported that the left foot showed great improvement and that the tendon lengthening with neurolysis had helped as well. In addition, the claimant had "much" less discomfort with the left foot and she was happy with the results. Dr. Kaplan noted that she had a similar problem on the right foot but not as severe. (Exhibit 8F)

Progress notes from the Tampa Community Health Center failed to document any pain complaints (with regard to her feet) by the claimant on a regular basis and routinely documented no edema. She was normally described as "appears well, in no distress." (Exhibit 15F) There was evidence of one emergency room visit for pain in the right ankle; and as described by the claimant the pain occurred when she stepped off the sidewalk and felt a snap (on Friday). She did not seek immediate attention but waited until Sunday, telling medical personnel that she had walked on the ankle all day the day before (Saturday). The only medication that she reported taking during this time was over-the-counter Ibuprofen. An ACE bandage was placed on the ankle and there was no evidence that she required a follow-up visit. This was the only time that the claimant sought emergency care due to pain in her ankle and it was not related to an ongoing problem but rather a separate incident. (Exhibit 21F)

Of significant import, the undersigned directs attention to the work release forms provided by Dr. Kaplan. The claimant testified that she had not work[ed] since the alleged onset date of disability of December 31, 2005, but the medical evidence indicated that her testimony was not entirely accurate. Dr. Kaplan issued the work release forms for specific time frames, i.e., 30-day and 60-day increments following outpatient surgeries and were never for a period of 12 months or more. Of significant import, the work release forms were issued in 2007 (Emphasis Added). The claimant

-18-

testified that she had not worked since December 31, 2005. It is not clear why the claimant would require a work release statement when she testified that she was not working unless she was in fact working. Nevertheless, what is pertinent was the fact that Dr. Kaplan furnished work release forms during this period. As such, the claimant apparently provided testimony that was contradictory to the medical evidence of record. (Exhibit 16F) While the claimant may not have intentionally attempted to portray limitations that were not actually present in order to increase the chance of obtaining benefits; in the interest of providing the claimant with every benefit of the doubt, the undersigned acknowledges that the inconsistent statements may not be the result of a conscious intention to mislead; nevertheless, the inconsistencies suggest that a great deal of the information provided by the claimant may not be reliable, and thereby significantly compromises her credibility in this case.

The law judge also noted that "[t]here were no opinions from any of the claimant's treating sources that she had any significant work-related limitations or she was unable to perform sustained work activity for a period of 12 months or more" (Tr. 21). This detailed explanation is more than adequate to discount the plaintiff's complaints of incapacitating pain. See, e.g., Heppell-Libsansky v. Commissioner of Social Security, 170 Fed. Appx. 693, 699 (11th Cir. 2006).

-19-

The law judge also considered the plaintiff's complaints of depression. In particular, the law judge noted that the plaintiff's Disability Report on Appeal included an allegation of depression, and she considered the opinions of Dr. Fred Alberts and the non-examining reviewing psychologists, Dr. Martha Putney and Dr. James Levasseur (Tr. 16, 18, 21-22).

Dr. Alberts diagnosed the plaintiff with "depressive disorder, not otherwise specified," and he opined that the plaintiff is moderately impaired in attention and concentration (Tr. 291-94). The law judge, however, concluded that this assessment was inconsistent with the medical evidence of record (Tr. 21). In this regard, the law judge explained that the plaintiff informed Dr. Alberts that "she was able to do her own cooking, shopping, and use[] public transportation, which indicates to the undersigned that [the plaintiff's] ability to sustain attention and concentration was not affected to a moderate degree of limitation" (id.). The law judge also noted that the plaintiff did not have difficulties answering questions at the administrative hearing (Tr. 21-22).

Contrary to the opinion of Dr. Alberts, Dr. Putney and Dr. Levasseur both concluded that the plaintiff's depression is not severe (Tr. 22, 296-309, 371-84). Both of these doctors opined that the plaintiff had no more than mild limitations in activities of daily living (Tr. 306, 381). The law judge, like Dr. Putney, found that the plaintiff had no limitations in activities of daily living, and only mild limitations in social functioning, and concentration, persistence, or pace (Tr. 16-17). Accordingly, the law judge concluded that the plaintiff's depression was a non-severe impairment. She thoroughly explained that conclusion as follows (Tr. 16):

> The medical evidence indicates that the claimant does not seek mental health treatment with a specialist and her medication is prescribed by her primary care physician. On May 22, 2007, Fred L. Alberts, Jr., Ph.D.[,] conducted a consultative evaluation. The claimant was transported via bus to the appointment and arrived on time for the scheduled evaluation. She was alert and was fully cooperative offering no resistance. Her speech was clear and understandable and speech quantity/ quality was within normal limits. Upon mental status examination, her thought processes were found to be logical and coherent. There was no report of or evidence of any unusual perceptual experiences, no paranoid mentation, and she was found to be oriented in all spheres. (Exhibit 12F) The medical evidence indicates that this condition

-21-

is controlled by medication, has resolved, has not lasted for 12 months duration, and/or does not significantly limit the claimant's ability to perform basic work-related activities. Thus the claimant's medically determinable mental impairment of depression does not cause more than minimal limitations in the claimant's ability to perform basic work-related mental activities and is therefore "non severe" as defined in the regulations.

Furthermore, the law judge recognized that Dr. Alberts had opined that the plaintiff had a moderate impairment in attention and concentration. She concluded, however, that this opinion was not consistent with the medical evidence in its entirety (Tr. 21). She then gave a cogent explanation for that conclusion (Tr. 21-22).

In sum, the law judge reasonably found that the plaintiff's depression was a non-severe impairment. Accordingly, it did not significantly affect the plaintiff's ability to work.

The plaintiff argues that "the medical evidence of record substantiates plaintiff's statements concerning the intensity, persistence, and limiting effects of her chronic pain and depression" (Doc. 15, p. 15). In

support of this contention, the plaintiff sets forth a summary of her medical history. This argument, however, is inadequate.

In the first place, it is not enough to show that there is evidence in the record that would support the plaintiff's allegations. The plaintiff must point to evidence that compels the finding that the plaintiff is fully credible. Adefemi v. Ashcroft, supra.

Furthermore, the plaintiff must show that she had functional limitations from her conditions that were not included in the law judge's determination of the plaintiff's functional capacity. In this respect, "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work." Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir. 2005) (quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986)). In other words, it is the functional limitations that determine disability. Moore v. Barnhart, 405 F.3d 1208, 1213 n. 6 (11th Cir. 2005); McCruter v. Bowen, supra. Here, the plaintiff makes no effort to show how her pain and depression create a specific functional limitation beyond the law judge's residual functional capacity finding.

Finally, the plaintiff points to the testimony of the vocational

expert to support her claim (Doc. 15, p. 16).  In particular, the plaintiff notes

that the vocational expert testified that there are no jobs available for a person

with a work history that includes missing three to four days of work per

month (id.).  The law judge discussed this testimony in her decision and

found it unpersuasive (Tr. 20-21).  Specifically, the law judge stated (Tr. 21):

> [T]he medical evidence of record simply does not
> support a conclusion that the claimant's
> impairments would cause her to miss work at such
> a frequency each month. In fact, when the claimant
> completed documents in connection with her
> disability claim, she reported that her pain was
> controlled by medications. Moreover, not one of
> the claimant's treating physicians has opined that
> it was ever anticipated that she would miss work at
> such a frequency.

This is a reasonable basis for concluding that the plaintiff would not miss

work as much as three or four days per month.  Accordingly, the hypothetical

question to the vocational expert that included an assumption of missing work

three to four days per month is not relevant.

For these reasons, I find that the plaintiff's argument that the law

judge's credibility finding was flawed lacks merit.  The law judge properly

applied the Eleventh Circuit pain standard, and, based on that standard, made a rational decision to discount the plaintiff's subjective complaints, articulating, in detail, her reasons for doing so.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby **AFFIRMED**. The Clerk shall enter judgment in accordance with this Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this 13th day of April, 2012.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE